UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRYONE FERGUSON, SR.,

        Plaintiff,

v.                                               Case No. 17-cv-198-pp

NISSEN STAFFING CONTINUUM, INC.
and BUYSEASONS, INC.,

        Defendants.

**ORDER GRANTING DEFENDANT NISSEN STAFFING CONTINUUM, INC.'S MOTION TO DISMISS (DKT. NO. 14), GRANTING DEFENDANT BUY SEASONS, INC.'S MOTION TO DISMISS (DKT. NO. 20), AND GRANTING THE PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT BY APRIL 27, 2018**

On February 14, 2017, the plaintiff, who is representing himself, filed a complaint alleging various claims, including race and age discrimination. Dkt. No. 1. Both defendants filed motions to dismiss. Dkt. Nos. 14, 20. Defendant Nissen Staffing Continuum, Inc. moves to dismiss for lack of subject matter jurisdiction as to the forgery claim, and failure to state a claim on all remaining claims. Dkt. No. 14. Defendant BuySeasons, Inc. joins in Nissen's motion to dismiss, but also moves to dismiss because the plaintiff's prayer for relief did not mention BuySeasons, and because BuySeasons alleges that it has not been properly served with a summons and complaint. Dkt. No. 20. The plaintiff has not responded to the motions to dismiss. The court will grant the motions to

dismiss, but will give the plaintiff the opportunity to file an amended complaint.

## I. Defendant Nissen Staffing Continuum's Motion to Dismiss (Dkt. No. 14)

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. Boucher, *et al.* v. Finance System of Green Bay, Inc., 880 F.3d 362, 366 (7th Cir. 2018) (quoting Iqbal, 556 U.S. at 678). A plaintiff's failure to respond to an argument raised in a motion to dismiss forfeits any argument on that issue. See Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); Lekas v. Briley, 405 F.3d 602, 614 (7th Cir. 2005).

B. The Complaint

The plaintiff begins his complaint by alleging that Nissen and BuySeasons violated "Title VII of the Civil Rights Act of 1964" and the "Age Discrimination Act of 1975." Dkt. No. 1 at 1. The plaintiff says that on August 16, 2016, he filed two separate charges with the Equal Employment Opportunity Commission ("EEOC"). Id. at 2. He says that in these charges, he alleged that he was discriminated against on the basis of his age (he is almost 56), and that he was fired in violation of the Age Discrimination in Employment Act. Id.

The plaintiff next says that on December 19, 2016, several months after he filed the EEOC charges, he filed a formal written request with the EEOC, asking for "all documents." Id. He alleges that it was then that he discovered that defendant Nissen had forged his signature on a document that stated that the applicant understood Nissen's policies and procedures regarding employment. Id. (citing Dkt. No. 1-1 at 1, "Exhibit 1"). The plaintiff alleges that this forgery violated the Forgery and Counterfeiting Act of 1981 ("an Act of the Parliament of the United Kingdom"). Id.

The plaintiff then discusses a standup forklift test, and points the court to a series of recordings that he submitted as exhibits to the complaint. Id. In this section of the complaint, the plaintiff says that one of Nissen's recruiters, Luis Rodriguez, was "Latin America," and that although Rodriguez was late several times, Nissen never fired Rodriguez. Id. at 3. The plaintiff says that Nissen also did not fire Rodriguez's son son, who is "between 26 and 29 years

3

old." Id. The plaintiff alleges that his is an African American who, at the time, was 54 years old, and that his work was so outstanding that Nissen and BuySeasons asked him to come "back to work for BuySeasons." Id.

The plaintiff continues over the next two pages by describing conversations he had with Rodriguez (and a few others, but mostly Rodriguez)—it appears to the court that all of these conversations related to the plaintiff trying to get Nissen to place him at BuySeasons. Id. at 3-4.

After returning to his claim that Nissen forged his signature on Exhibit 1, id. at 5, the plaintiff alleges that he is filing suit to "correct unlawful employment practices on the basis of race, sex and age discrimination," id. He also alleges that forgery is a crime under Wisconsin law "punished as a Class H felony." Id. In his prayer for relief, he asks the court to issue an injunction against Nissen, preventing Nissen from taking various actions against him. Id. He also seeks compensation for past and future "pecuniary and non-pecuniary losses resulting from the unlawful and intimidating employment practices." Id.

The plaintiff attached a number of items to the complaint, including the document that allegedly has the plaintiff's signature forged on it, dkt. no. 1-1 at 1; a letter from Lori Gengler at Nissen Staffing Continuum stating that the plaintiff "is no longer working through our agency," id. at 2; and his notices of right to sue letter from the EEOC, id. at 3-4. He also filed with the court an audio disc containing a series of unauthenticated, recorded telephone phone calls; the plaintiff asserts that these calls are from him to Rodriguez, Mr. Gamboe (a supervisor) and Mr. Duke to find out why he was not supposed to

4

report to work. Dkt. No. 1, CD on file. As the court noted above, the plaintiff referenced the conversations on the CD numerous times in the complaint.[1] Id. at 3-4.

    C.    <u>Plaintiff's Claims</u>

In its screening order, the court allowed the plaintiff to proceed only on his employment discrimination claims against both defendants on the basis of race and age under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e *et seq.*, and on the basis of age under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §621 *et seq.* Dkt. No. 4 at 3. Despite that fact, the defendants have moved to dismiss *all* of the claims the plaintiff appears to have been trying to raise: (1) race and sex discrimination under Title VII; (2) race and sex discrimination under Title I; (3) age discrimination; (4) fraud or forgery under the Forgery and Counterfeiting Act of 1981; (5) fraud or forgery under Wis. Stat. §943.38; and (6) defamation.

        1.    *Plaintiff's Claims for Forgery and Counterfeiting Act of 1981*

The plaintiff asserted that the alleged forgery of his name on Exhibit 1 violated the "Forgery and Counterfeiting Act of 1981;" according to the plaintiff, this is an "Act of the the Parliament of the United Kingdom which makes it illegal to make fake versions of many things, including legal documents, contracts, audio and visual recordings, and money of the United Kingdom and certain protected coins." Dkt. No. 1 at 4. As far as the court can tell, the

---

[1] For purposes of a Rule 12(b)(6) motion, the pleadings "consist generally of the complaint, any exhibits attached thereto, and supporting briefs." <u>Thompson v. Ill. Dep't of Prof. Regulation</u>, 300 F.3d 750, 753 (7th Cir. 2002).

plaintiff is asserting that the alleged forgery of his name violates a statute from the country of England.

Federal district courts have limited jurisdiction. District courts have original jurisdiction over civil case arising under the Constitution, laws or treaties of the United States, 28 U.S.C. §1331, and cases in which the amount in controversy exceeds $75,000 and involves citizens of different states (or citizens of a state and subjects of a foreign state), 28 U.S.C. §1332. The plaintiff's allegation that Nissen violated a statute from England do not arise under the Constitution, the laws or any treaties of the United States. That means the court does not have what is known as "federal question" jurisdiction over that allegation. The plaintiff lives in Milwaukee, Wisconsin, and alleges that Nissen (the defendant who he claims committed the forgery) operates a "staffing corporation" "headquartered in Waukesha, Wisconsin." In other words, the plaintiff has sued a defendant who lives in the same state that he lives in. This means that the court does not have what is known as "diversity jurisdiction" over the plaintiff's forgery claim against Nissen.

Because the court does not have jurisdiction over the plaintiff's claim that Nissen forged his name in violation of a statute from the country of England, the court will grant the defendants' motion to dismiss that claim.

    2.    *Plaintiff's Claim of Sex Discrimination in violation of Title VII and Title I*

On the last page of his complaint, the plaintiff said that he had filed his lawsuit to "correct unlawful employment practices" on the basis of sex discrimination under Title VII of the Civil Rights Act of 1964 and Title I of the

6

Civil Rights Act of 1991. Dkt. No. 1 at 5. The plaintiff did not raise a sex discrimination claim in his EEOC complaints; he alleged only discrimination based on race (African American) and age.[2] Before a plaintiff can bring a Title VII sex discrimination claim in federal court, he first must file a charge with the EEOC, "and the EEOC must issue a right-to sue letter." Conner v. Ill. Dept. of Natural Resources, 413 F.3d 675, 680 (7th Cir. 2005) (citing Hentosh v. Herman M. Finc. Univ. of Health Scis./The Chi. Med. Sch., 167 F.3d 1170, 1173 (7th Cir. 1999)). "Generally, 'a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge.'" Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 634 (7th Cir. 2013). Because the plaintiff did not include a sex discrimination allegation in his EEOC complaints, he cannot pursue a sex discrimination claim in this lawsuit.

In addition, none of the allegations in the plaintiff's complaint state facts that would support a sex discrimination claim. He does not allege that the defendants refused to hire him or place him because he is a man. He does not allege that they hired or placed equally qualified women instead of hiring or placing him.

Finally, the plaintiff said that in addition to bring suit under Title VII, he also was suing under Title I of the Civil Rights Act, which is codified at 42

---

[2] The plaintiff attached the dismissal and notice of rights forms that he received from the U.S. Equal Employment Opportunity Commission. Dkt. No. 1-1 at 3-4. Because he refers to the EEOC claim in his complaint and the claim is central to his complaint, the fact that Nissen attached to its motion the actual EEOC charge of discrimination form that the plaintiff filed against it (dkt. no. 15-1) does not convert the motion to dismiss to one for summary judgment. See Wright v. Associated Ins. Cos. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994).

7

U.S.C. §1981a. Although Title I broadens the remedies available to a successful Title VII litigant, it does not provide substantive rights independent of Title VII. 42 U.S.C. §1981a. The court will dismiss the plaintiff's claims under Title I.

3.  *Plaintiff's Claim of Race Discrimination*

The plaintiff states that he is suing to correct employment practices for race discrimination under Title VII and Title I. Again, Title I does not provide an independent substantive cause of action, and the court will dismiss the plaintiff's Title I race discrimination claim.

With regard to the plaintiff's Title VII race discrimination claim: In the absence of direct evidence (such as a defendant stating that it is firing a person because of his race), a plaintiff alleging a Title VII race discrimination claim must show: (1) that he is a member of a protected class, (2) that he was qualified for the applicable positions; (3) that he was subjected to an adverse employment act, and (4) that there is a link between the fact that he is a member of a protected class and the fact that he suffered an adverse employment act. McGowan v. Deere & Co., 581 F.3d 575, 579 (7th Cir. 2009). In a Title VII case, a plaintiff can generally allege the connection between membership in a protected class and an adverse employment action. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The plaintiff alleges: (1) that he is African American; (2) that he "was discharged;" (3) that no one can fail a standing forklift test; (4) that his supervisor at BuySeasons (Mr. Gamboe) had no complaints; (5) that Nissen's recruiter, Luis Rodriguez Sr., was Latino; (6) that Rodriguez arrived late for

8

work at BuySeasons numerous times but the defendants never fired him; and (7) that the plaintiff performed outstanding work, which prompted Luis Rodriguez Sr. to ask the plaintiff how he felt about returning to BuySeasons.

Even if the court liberally construes the plaintiff's allegations, the current complaint does not state a claim against either defendant. The plaintiff does not tell the court what specific adverse employment action he suffered. Was he working for Nissen or BuySeasons, and then they fired him? Is he alleging that Nissen refused to place him, or that BuySeasons refused to hire him? The plaintiff does not say which defendant did what to him. He does not explain what makes him believe that he was fired (or not hired or placed) because of his race, other than to point out that Rodriguez (who is of a different race) was late several times to BuySeasons and was not fired.

The documents the plaintiff attached to the complaint don't help the court. He attached the September 23, 2016 letter from Ms. Gengler saying that the plaintiff "[was] no longer working through [Nissen]." Dkt. No. 1-1 at 2. This doesn't prove that the plaintiff was fired, or discriminated against, by Nissen. Exhibit 1, the Nissen policy statement on which the plaintiff alleges someone forged his signature, states that the applicant understands that only Nissen can terminate the applicant's employment, and that failure to complete an assignment will be interpreted as the applicant's decision to voluntarily quit. Id. at 1. This does not shed light on what action the plaintiff believes the defendants took against him, or why he believes they took these actions based on his race.

9

The plaintiff talks about Rodriguez being late, but does not explain why that is relevant to his claims. Does he think that he was fired for being late, when someone of a different race was not? He talks about passing the standing forklift test. Does he believe that people of other races failed the test but were placed, while he was not?

The court will allow the plaintiff to amend his complaint, to try to make his Title VII discrimination claim clearer. In the amended complaint, he needs to tell the court what adverse employment action he believes each of the two defendants took against him. He must explain why he believes that the defendants took those actions based on his race, and not for some other reason. The plaintiff should tell the court when the adverse employment actions took place, and where.

Along with this order, the court is sending the plaintiff a copy of the court's Guide to Filing Non-Prisoner Complaints, and a form complaint. If the plaintiff chooses to file an amended complaint, he must use this form. He must write the word "Amended" next to the word "Complaint" at the top of the first page. He must put the case number assigned to this case—17-cv-198—in the space under "Case Number" on the first page. The amended complaint will take the place of the original complaint, so the plaintiff may not incorporate his original complaint into the amended complaint.

4. *Plaintiff's Claim of Age Discrimination*

The plaintiff also asserts several times that he believes that the defendants discriminated against him based on his age, in violation of the Age

Discrimination in Employment Act. The ADEA protects workers forty years of age and older, and "makes it unlawful for an employer . . . 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Skiba v. Ill. Cent. R.R. Co., Case No. 17-2002, 2018 WL 1190856, at *5 (7th Cir. 2018) (quoting 29 U.S.C. §623(a)(1)).

Again, in its current state, the complaint does not state a claim for age discrimination. The plaintiff alleges that he was 54 years old at the time of the complaint. He also alleges that Luis Rodriguez, Jr. is between 27 and 29. Other than that, the plaintiff does not say what adverse employment actions either defendant took against him. He does not say why he believes that they took those actions based on his age. The court will allow the plaintiff to try to make his age discrimination claim clearer in the amended complaint. As with his race discrimination claim, he will need to tell the court what each defendant did, when they did it, where they did it and why he believes they did it based on his age.

The court emphasizes that if the plaintiff chooses to file an amended complaint, he may bring only *two claims* in it: his claims of racial discrimination and age discrimination under Title VII. He may not bring any of the other claims the court dismisses in this order.

### 5. *Plaintiff's Claim under Wis. Stat. §943.38*

It is not clear to the court whether the plaintiff was trying to assert a claim that whoever forged his name on Exhibit 1 violated Wis. Stat. §943.38. If the plaintiff was trying to assert that claim, however, the court will dismiss it. Wis. Stat. §943.38 is a criminal statute. Private citizens cannot sue people under criminal statutes. Only a state prosecutor, as a representative of the State of Wisconsin, may bring criminal charges.

### 6. *Plaintiff's Claim of Common Law Fraud*

The plaintiff mentions "fraud" in some places in the complaint. Again, it is not clear to the court whether the plaintiff is trying to bring a common-law fraud claim, or against whom he is trying to bring it. If he was trying to allege that the defendants committed fraud, the court will dismiss that claim because the plaintiff has not pled his claim with particularity as required by Rule 9(b) of the Federal Rules of Procedure. To plead a fraud claim under Wisconsin law, a plaintiff must identify a false representation, must show that the false representation was made with the intent to defraud and for the purpose of inducing another to act upon it, and must show that the false statement actually induced another to rely and act upon that representation, causing injury or damage. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 318 n.5 (1987); see also Ollerman v. O'Rourke Co., 94 Wis.2d 17, 25 (1980).

The plaintiff alleged that Exhibit 1 to the complaint does not bear his signature or his penmanship. This is nowhere near sufficient to allege a fraud claim. He does not allege that the defendants made a false misrepresentation

(or say which of them did so), knowing that it was untrue. He does not say what the false representation was. He does not say that they intended to induce anyone to rely on the false claim, or that anyone actually did rely on the false claim. The court will dismiss any claim of fraud.

       7.    *Plaintiff's Claim of Defamation*

In his prayer for relief, the plaintiff asks the court to issue an injunction ordering the defendants not to defame his character. The court cannot tell whether the plaintiff was trying to bring a defamation claim, but if he was, the court will dismiss it. In Wisconsin, a defamation claim requires (1) a false statement concerning another (2) communicated by speech, conduct, or in writing to someone other than the person defamed (3) that is unprivileged and is defamatory. See Hart v. Bennet, 267 Wis. 2d 919, 941 (2003). The plaintiff did not allege that anyone made a false statement about him that was defamatory.

**II.    Defendant BuySeasons' Motion to Dismiss (Dkt. No. 20)**

BuySeasons joined the arguments raised in Nissen's motion to dismiss, and the court will grant the motion for the same reasons it gave in its discussion of Nissen's motion. BuySeasons also asserts, however, that the prayer for relief in the complaint does not ask for any relief against BuySeasons, and because the plaintiff failed to properly serve BuySeasons within ninety days and that no proof of service has been filed with the court. Dkt. No. 20 at 2.

BuySeasons is correct that the plaintiff did not ask for any relief against BuySeasons. His prayer for relief asks the court to enjoin Nissen from engaging in certain actions, and to order Nissen to pay him compensation. Dkt. No. 1 at 5. This is another basis for the court to grant BuySeasons's motion to dismiss.

BuySeasons's allegation that it was not properly served, however, ignores the realities of how this *pro se* plaintiff's case has proceeded, and is frankly somewhat disingenuous.

It is true that typically, a plaintiff has the burden to make a *prima facie* showing that he effected proper service when the defendant has challenged sufficiency of service under Rule 12(b)(5). A plaintiff's *pro se* status doesn't excuse his failure to comply with procedural rules. McMasters v. United States, 260 F.3d 814, 818 (7th Cir. 2001). Rule 4 says that a plaintiff must complete service within ninety days of the filing of the complaint. Fed. R. Civ. P. 4(m). A plaintiff serving a corporation must effectuate that service (1) in a manner prescribed under Wisconsin law or (2) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and . . . by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). Under Wis. Stat. §180.0504, a corporation's registered agent is the agent for service of process or, if the corporation has no registered agent, service may be made by registered or certified mail provided certain criteria is met. Wis. Stat. §§180.0504(1), (2).

In this case, though, the court's screening order required the U.S. Marshal's Service to serve the defendants on the plaintiff's behalf. Dkt. No. 4. Given that order, the plaintiff was entitled to rely on the U.S. Marshal to timely effect service.

The plaintiff filed the complaint on February 14, 2017. Dkt. No. 1. The court issued its screening order on February 24, 2017. Dkt. No. 4. The U.S. Marshal mailed the waiver of service packet to BuySeasons on March 8, 2017, but BuySeasons did not waive service. Dkt. No. 11. On May 25, 2017, ten days after BuySeasons filed its motion, the U.S. Marshal Service filed the executed summons with the court. Dkt. No. 25. The process receipt and return filed by the U.S. Marshal on May 26, 2017 shows that the Marshal effected service on May 25, 2017 by delivering a copy of the summons and complaint to Mary Jo Rowbottom (Customer Service) at BuySeasons, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

So—the Marshal effected service one hundred days after the plaintiff filed is complaint, and exactly ninety days after the court issued its screening order. If the defendant had waived service when the Marshal mailed the service packet, the Marshal would not have had to expend time and resources to effectuate formal service. Courts have found good cause to extend the time for service under Rule 4(m) when it is the Marshal's Service that fails to serve the defendant in a timely manner. See Graham v. Satkoski, 51 F.3d 710, 712 (7th Cir. 1995). In this case, the Marshal did not fail to timely effectuate service, given that it did so ninety days after the court issued the screening order.

15

The court also notes that a defendant's failure to sign and return the waiver of service, without showing good cause, requires the court to impose (1) the expenses later incurred in making service and (2) reasonable expenses required to collect those service expenses. Fed. R. Civ. P. 4(d)(2).

While the court will grant BuySeasons's motion to dismiss based on failure to state a claim and failure to seek relief against it, the court will not grant that portion of the motion that seeks dismissal for failure to properly serve BuySeasons.

### III. Conclusion

The court **GRANTS** defendant Nissen Staffing Continuum, Inc.'s motion to dismiss. Dkt. No. 14.

The court **GRANTS** defendant BuySeasons, Inc.'s motion to dismiss, to the extent that it is based on failure to state a claim and failure to seek relief against the defendant. Dkt. No. 20.

The court **ORDERS** that if the plaintiff wishes to proceed on his claims of racial and age discrimination under Title VII, he must file an amended complaint in time for the court to receive it by the end of the day on **Friday, April 27, 2018**. If the court does not receive an amended complaint that complies with this order by the end of the day on Friday, April 27, 2018, the

court will dismiss the case for failure to diligently prosecute under Civ. L.R. 41(c) (E.D. Wis.).

Dated in Milwaukee, Wisconsin this 27th day of March, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**